IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| OCEOLA DEVELOPMENT & CONSTRUCTION, LLP, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 2:19-cv-0739-DCN |
| vs. | ) ) | |
| INTERNATIONAL INSURANCE COMPANY OF HANNOVER, PLC, | ) ) ) ) | **ORDER** |
| Defendant. | ) ) | |

The following matter is before the court on defendant International Insurance Company of Hannover's ("Hannover") motion for summary judgment, ECF No. 20. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

This insurance dispute arises out of an incident that took place on a construction site in June 2014. Osceola Development & Construction, LLP ("Osceola")[1] is a general contractor that was retained to renovate a restaurant located at 565 King Street in Charleston. Although Osceola was the general contractor on the project, VLN Contractors, Inc. ("VLN") was the company "in charge of the construction." ECF No. 20-4, the "Underlying Compl." ¶ 4.[2] VLN, through its principal Voung Lin Nguyen

---

[1] Osceola's name is misspelled in both this action and the underlying action as "Oceola". The court will retain the caption with the misspelling but will hereinafter use the correct spelling of the plaintiff's name.

[2] The record falls well short of providing the court with a clear picture of the construction project at 565 King Street, the hazy particulars of which the court gleans from the underlying complaint. However, because the details of the project are not material to the court's analysis, it recounts them here to the best of its ability merely to establish the setting for the relevant legal dispute.

1

("Nguyen"), hired William Ames Smith ("Smith") to work on the project at 565 King Street as a laborer.  According to both parties, Smith was aggressive, volatile and often exhibited brutish behavior at the construction site.  On or around June 17, 2014, David Boyd ("Boyd"), who oversaw aspects of the construction project, reported Smith to Nguyen after Boyd witnessed Smith yelling lewd comments to female passersby.  Nguyen confronted Smith about the incident and informed Smith of Boyd's report.  Then, "Smith charged across the room toward Boyd and punched Boyd in the face around his right eye."  Underlying Compl. ¶ 20.  On November 1, 2016, Boyd filed an action against Osceola, Smith, and others in the South Carolina Court of Common Pleas (the "underlying action"), alleging claims of (1) assault, (2) battery, (3) negligent hiring, retention, and supervision, and (4) intentional infliction of emotional distress.  Boyd's complaint alleges damages that include pain and suffering, medical expenses, emotional distress, punitive damages, and attorney's fees.

Osceola maintained a commercial general liability policy with Hannover from April 7, 2014 to April 7, 2015 (the "Policy").  In compliance with the Policy, Osceola notified Hannover of Boyd's claims and demanded a defense.  Hannover responded, denying coverage.  On February 4, 2019, Osceola filed this action in the South Carolina Court of Common Pleas, seeking a declaration that Hannover had a duty to defend Osceola in the underlying action and alleging "improper claim practices" against Hannover.  ECF No. 1-1.  On March 11, 2019 Hannover removed the matter to this court based on diversity jurisdiction.  ECF No. 1.  On January 29, 2020, Hannover filed a motion for summary judgment.  ECF No. 20.  On February 21, 2020, Osceola responded

to the motion, ECF No. 23, to which Hannover replied on February 25, 2020, ECF No. 24.  Thus, this matter has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, "'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by

demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the fact finder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III. DISCUSSION

**A. Declaratory Judgment Claim**

Hannover argues that summary judgment is proper on Osceola's declaratory judgment claim because each claim in the underlying action arises from an alleged assault and battery and is therefore excluded from coverage under the Policy. In response, Osceola does not dispute that the Policy excludes from coverage the underlying claims for assault, battery, and intentional infliction of emotional distress. However,

4

Osceola argues, because the underlying claim for negligent hiring, retention, and supervision is not excluded from coverage, Hannover has a duty to defend Osceola in the underlying action. The court agrees with Hannover and therefore grants summary judgment in favor of Hannover on Osceola's declaratory judgment claim.

Under South Carolina law, insurance policies are subject to the general rules of contract construction. B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." Id. The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. Id. "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, 348 (S.C. 1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." Poston v. Nat'l Fid. Life Ins. Co., 399 S.E.2d 770, 772 (S.C. 1990).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. S.C. Ins. Co. v. White, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be

liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. M & M Corp. of S.C. v. Auto–Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010); Owners Ins. Co. v. Clayton, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." S.C. Farm Bureau Mut. Ins. Co. v. Wilson, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

The Policy contains an exclusion that disclaims liability for intentional injuries, including "bodily injury" that arises out of assault or battery (the "intentional injury exclusion"):

> Exclusion a. Expected or Intended injury under SECTION 1-COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced with the following:
>
> 2. Exclusions This insurance does not apply to:
>
> a. Intentional Injury
>
> > i. Expected or intended injury "Bodily injury" or "property damage" expected or intended from the standpoint of any insured; or
> >
> > ii. Assault and Battery
> >
> > "Bodily injury" or "property damage" arising out of:
> >
> > > a) Assault
> > >
> > > b) Battery
> > >
> > > c) Harmful or offensive contact between or among two or more persons
> > >
> > > d) Apprehension of harmful or offensive contact between or among two or more persons,

6

> e) Threat by word or deed. These exclusions apply regardless of:
>
> f) Whether or not the acts are alleged to be by or at the direction of any insured.

ECF No. 20-2 at 41.

It is clear to the court, and Osceola does not dispute, that Boyd's claims in the underlying action that allege intentional behavior fall within the intentional injury exclusion. Therefore, the court finds that the Policy does not extend coverage to Osceola for the underlying action's claims for assault, battery, and intentional infliction of emotional distress. The parties disagree, however, about whether the underlying claim for negligent hiring, retention, and supervision receives coverage under the Policy. Osceola argues that the claim arises from its negligence, not an intentional act, and thus receives coverage. Hannover argues that the underlying negligence claim falls within the intentional injury exclusion because it arose out of Smith's intentional act. South Carolina courts would agree with Hannover.

The court finds Sphere Drake Ins. Co. v. Litchfield, 438 S.E.2d 275 (S.C. Ct. App. 1993), instructive. There, the plaintiff was injured in an insured's nightclub when employees of the nightclub forcefully removed him from the establishment. The relevant insurance policy included an "assault and battery exclusion" that excluded from coverage claims "arising out of assault and battery." Id. at 277. The South Carolina Court of Appeals held that not only did the underlying claims of assault and battery fall within the coverage exclusion, but the underlying claims of negligence alleged against the insured fell within the exclusion as well. The court reasoned that "without the assault and battery[,] there would be no damage suffered as a result of the alleged negligence of [the

7

insured]." Id. In other words, the court found that although the negligence claims did not legally arise from the employee's intentional act, the resulting damage, an element necessary to the negligence claims, did arise from the intentional act. Therefore, the court concluded that "[t]he [underlying] negligence claims are for bodily injury 'arising out of' assault and battery and come within the exclusion." Id.

To be sure, Osceola is correct that the claim of negligent hiring, retention, and supervision in South Carolina arises from an employer's own negligence and is not a form of derivative liability based on an employee's act. See James v. Kelly Trucking Co., 661 S.E.2d 329, 331 (S.C. 2008) (noting that an employer's liability under a theory of negligent hiring, supervision, or retention "does not rest on the negligence of another, but on the employer's own negligence"). However, the court in Sphere Drake considered this distinction and nevertheless concluded that "the separate acts of negligence alleged [in the underlying action] are not actionable without the assault and battery" because "without the assault and battery[,] there would be no causal connection between the employer's alleged negligence and the resulting injury." 438 S.E.2d at 277. The same is true here with respect to Smith's intentional act and the underlying claim of negligent hiring, retention, and supervision.

Several courts in this district, applying South Carolina law, have relied on Sphere Drake to find that negligence claims fall within intentional injury exclusions where the underlying injury results from an intentional act. See United Prop. & Cas. Ins. v. Hunter, 2018 WL 4076477 (D.S.C. July 3, 2018), report and recommendation adopted, 2018 WL 4076476 (D.S.C. Aug. 7, 2018), aff'd sub nom. United Prop. & Cas. Ins. v. Roe, 773 F. App'x 160 (4th Cir. 2019) (finding that negligence claims arose out of an intentional

sexual molestation and were excluded from coverage); Scottsdale Ins. Co. v. GS Thadius LLC, 328 F. Supp. 3d 527 (D.S.C. 2018), case dismissed sub nom. Scottsdale Ins. Co. v. NEM Inc., 2019 WL 4862163 (4th Cir. May 14, 2019), and aff'd sub nom. Scottsdale Ins. Co. v. Acosta, 792 F. App'x 268 (4th Cir. 2020) (finding that gross negligence and dram shop liability claims arose out of intentional tortious conduct and were excluded from coverage); Founders Ins. Co. v. Hamilton, 2017 WL 4615814 (D.S.C. Oct. 13, 2017) (finding that a claim of negligent training arose out of assault and battery and was excluded from coverage); St. Paul Reinsurance Co. v. Ollie's Seafood Grille & Bar, LLC, 242 F.R.D. 348 (D.S.C. 2007), aff'd sub nom. St. Paul Reinsurance Co. v. Riviello, 296 F. App'x 377 (4th Cir. 2008) (same).

Here, the underlying complaint alleges damages that are a direct result of Smith's intentional act. Like in Sphere Drake, the underlying negligence claims would fail without the intentional act because the intentional act is the causal connection between Osceola's alleged negligence and Boyd's resulting injury. Also like Sphere Drake, the insurance policy here plainly excludes "'[b]odily injury' or 'property damage' arising out of" an assault or battery. ECF No. 20-2 at 41. Therefore, the court finds that the underlying claim for negligent hiring, supervision, or retention falls within the intentional acts exclusion. As such, the court finds that Hannover does not have a duty to defend Osceola in the underlying action and grants Hannover's motion for summary judgment with respect to Osceola's declaratory judgment claim.

### B. Improper Claim Practices

Osceola's complaint also asserts "Unfair Claim Practices" as a second cause of action. Hannover argues that it is entitled to summary judgment on that claim because

9

"South Carolina does not recognize a private cause of action for improper claim practices." ECF No. 20 at 12. Osceola does not respond to this argument in its response.

Although Osceola's complaint does not cite to a statute, the court assumes that Osceola's claim is based on the Improper Claim Practices Act and particularly section 38-5-9-20, from which its allegations heavily draw. That section states in relevant part:

> Any of the following acts by an insurer doing accident and health insurance, property insurance, casualty insurance, surety insurance, marine insurance, or title insurance business, if committed without just cause and performed with such frequency as to indicate a general business practice, constitutes improper claim practices:
>
> (1) Knowingly misrepresenting to insureds or third-party claimants pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages.
>
> . . .
>
> (5) Compelling policyholders or claimants, including third-party claimants under liability policies, to institute suits to recover amounts reasonably due or payable with respect to claims arising under its policies by offering substantially less than the amounts ultimately recovered through suits brought by the claimants or through settlements with their attorneys employed as the result of the inability of the claimants to effect reasonable settlements with the insurers.
>
> . . .
>
> (7) Invoking or threatening to invoke policy defenses or to rescind the policy as of its inception, not in good faith and with a reasonable expectation of prevailing with respect to the policy defense or attempted rescission, but for the primary purpose of discouraging or reducing a claim, including a third-party liability claim . . . .

S.C. Code Ann. § 38-59-20.

This court has previously found that the Improper Claims Practices Act does not create a private right of action in South Carolina.

> In <u>Masterclean, Inc. v. Star Ins. Co</u>., 556 S.E.2d 371, 377 (S.C. 2001), the South Carolina Supreme Court held that "third parties do not have a private

right of action under S.C. Code Ann. § 38–59–20." Instead, they are entitled to administrative relief before the Chief Insurance Commissioner. 556 S.E.2d at 377. Although this court is not aware of any South Carolina court decision that has specifically held that a first-party claimant also does not have a private right of action under section 38–59–20, some courts have issued broad statements that the Improper Claims Practices Act "does not create a private cause of action." Gaskins v. Southern Farm Bureau Cas. Ins. Co., 541 S.E.2d 269, 272 (S.C. App. 2000) (third-party case); accord Swinton v. Chubb & Son, Inc., 320 S.E.2d 495, 497 (S.C. App. 1984) (holding in a third-party case that § 38–37–1110, the predecessor statute, recodified as § 38–59–20 by 1987 Act No. 155, § 1, "does not establish ... a private right of action for any violation thereof") (omissions in original). Further, the text of section 38–59–20 does not draw any distinction between first-party and third-party claims. Thus, this court concludes based on South Carolina court decisions in the third party context that the South Carolina courts would also conclude that section 38–59–20 does not create a statutory private cause of action for first-party claimants.

Ocean Winds Council of Co-Owners, Inc. v. Auto-Owners Ins. Co., 241 F. Supp. 2d 572, 578 (D.S.C. 2002). In the time since the court reached that conclusion, South Carolina law has not developed in a way that gives the court reason to change its mind. Therefore, Hannover is entitled to summary judgment on Osceola's improper claim practices cause of action. As such, the court grants Hannover's motion in full.[3]

---

[3] In its motion, Hannover also argues that it is entitled to summary judgment on any potential bad faith claim, "to the extent that this Court construes the Complaint to include such an action . . . ." ECF No. 20 at 14. Osceola's complaint does not allege bad faith, and Osceola has not asked the court to construe its complaint to include such a claim. As such, the court need not consider a theoretical claim for bad faith to grant summary judgment in this matter and declines to do so here.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 6, 2020**
**Charleston, South Carolina**